Corporation. I'd like to focus this morning on the central issue in the case, that is, whether Costco is entitled to judgment because it realistically expected the managers to perform as exempt employees given, one, the district court's finding that the managers knew that expectation, two, plaintiff's concession that Costco did not know that they were supposedly performing, supposedly spending the majority of their time performing non-exempt tasks, and three, given Costco did not turn a blind eye to how the managers were performing their job. As background, the managers alleged they were owed overtime. Costco claimed they were exempt from overtime requirements by the executive exemption. The managers were high-ranking senior managers with warehouse-wide responsibilities, in addition to being in charge of their own crew of employees in a physically separate part of the warehouse. The district court found, as a matter of fact, that Costco had not established that these employees spent the majority of their time on the so-called exempt tasks, executive administrative things. You don't challenge that finding, do you? We do not. So, if absent that element, tell me why you're entitled to judgment. It's a requirement that in addition to the actual duties of the employee, the court must look at the employer's realistic expectation. No, I understand the case is set forth on a five-part test, and this is one of the elements, but are you telling me that realistic expectations trump the actual work of the employees? Correct, Your Honor. The district court's approach is directly contrary to the California Supreme Court's case, Ramirez v. Yosemite, which is a seminal case on this matter. In fact, in Ramirez, Judge Mosk specifically developed the realistic expectations requirement to aid the employer's expectations for some... Yeah, and I asked a different question, and maybe it wasn't clear. I understand the realistic expectations requirement. My question is, aren't these factors all considered together by the finder of fact, who then eventually figures out whether or not you've rebutted, you've established the exemption, as opposed to saying, well, we said our realistic expectation was X, and therefore no matter how much non-exempt work the employee did, it doesn't matter. So that's why the question is, does it trump? It is a balancing test, but an employee's actual job duties do not trump if they evade the employer's expectations. No, and I guess to use a bridge term, we're dealing with no Trump here. We're dealing with five factors that a court, five, I think it is, if I remember correctly, that a court takes into account... Four suits and no Trump. Yeah, four suits and no Trump. Five suits that a court takes into account and balances and makes a factual determination. And the district judge here appears to have done that, and you don't challenge at least one of those factors, which is how much time the employee spent. So I ask this because I need education if I'm wrong. I'm having difficulty figuring out why just because one of your other factors is strong, that prevents the district judge from weighing them all and ending up with the decision the judge arrived at. The realistic expectation prong must trump the actual job duties, otherwise an employee can secretly evade the employer's expectations. Would we be making new law? We'd not be making new law. Have they ever said that? That one trumps? I read the case law the way Judge Hurwitz does. There's a difference. Well, you wouldn't be making new law because the way Judge Moss developed the realistic expectation in Ramirez, he expressed two concerns. One was, obviously you look at the employee's actual job duties, but the biggest concern is that an employer cannot evade the employer's expectations through subpar performance. But carried to extreme that would allow an employer to put its head in the sand and disregard what the employer knows darn well is happening. And that's not what you're suggesting. So how do we reconcile your view? How would we temper it? It doesn't seem like you're offering any alternative there. An employer's not entitled to turn a blind eye. But at the very same time, an employer's entitled to trust that its high-level management employees are going to obey the law and follow the company's policies. Here, Costco didn't turn a blind eye. Well, let me ask you about that, counsel. There's a memo at Excerpt 993. It's dated 2001, so significantly earlier. Are you familiar with that? I am, Your Honor. What about that memo? That memo says we believe that most other salaried managers are managing or performing more than 50 percent of their time in non-exempt duties. Exempt duties, rather. Most of them were. And they recognize that this was an issue. That particular memo was talking about a different group of managers. Yes, I understand. And so they reclassified that position rather than doing a minute-by-minute analysis of every employee. But the memo went on to consider all other management positions, and they declined to reclassify the receiving manager positions. Well, hold on just one second, because this memo is of some concern to me. So could you favor me with explaining what the difference is between an ancillary manager and a warehouse manager? Yeah. The way the warehouse works is there's a general manager who manages the entire warehouse. Then there are four senior-level managers who have keys to the warehouse, and they have warehouse-wide responsibilities. Are those ancillary? No, they're below them. There's two assistant general managers, and the receiving managers also want to be senior managers. Ancillary managers are below them. For example, they manage the smaller departments, like the optical department, the hearing aid department, the small periphery department you see around a Costco warehouse. All right. And so this memo, which was, as I said, it's significantly earlier in the... Was this admitted, first of all? It was, Your Honor. This was admitted at trial. And it's addressed to the warehouse managers. Questions and answers for warehouse managers is about the recategorization of the ancillary managers. So apparently that's because the ancillary managers report to the warehouse managers. That was the idea. The ancillary managers report to the assistant managers, and the assistant managers report to the general manager. They're lower level, but primarily they were reclassified for a number of different reasons, whether they didn't supervise enough employees or whether they didn't have the significant responsibilities as receiving managers here. So the ancillary manager and the managers we're dealing with today are not in the same chain of command. Correct. They're not in the same chain of command. Ultimately, the receiving manager, the managers here, supervise the ancillary managers. Well, in the chain of command, they're not on the same level in the org chart, right? No, they're below them. They're well below them. All right. So this memo says, managers do not drive forklifts, stock, or ring registers. And it seems to me, in this case, there's a stipulation from the parties about how much time these folks were working. Stipulation that they were working more than 40 hours a week. And the question really is, what tasks were they performing? So this memo seems to me to be... Disheartened manager. And it basically is saying, don't overwork these guys. That's not Costco's intent. But there was an occasion here where they had to say, hey, they're not supposed to be performing these other tasks. Right? Doesn't this... I would imagine that the other side's going to get up and tell me that this is an indication that Costco maybe did have noticed that folks were frustrated and performing non-exempt duties. So what's your response? Well, first of all, again, that is not an ancillary manager. That's not a receiving manager position. It's an ancillary, entirely different position. Well, the reason... I appreciate that explanation. And I'll get out of your way here in a minute and let you answer my question. But the trial court in this case made findings, especially as to the penalty where Mr. Berry is concerned, that really go to this... I don't think he used the phrase, looking the other way. But I think he said, we've seen memos in this trial that indicate that Costco knew this was an issue and they were responsible for knowing what their guys were doing. I'm paraphrasing, of course. What is your response to that? The memo actually is in Costco's favor. Not only is it a different position, but it shows that Costco focused on this classification issue four years before they even worked in the position. And when they saw an error or what they thought was a potential risk, they corrected it. Then after that memo went out, they educated the general managers on the law. The general managers then communicated their concerns, communicated the law and their expectations to all the other managers in the warehouse. It says, we believe that most other salaried managers are currently managing others more than 50% of the time. That's referring to ancillary managers. It refers to receiving managers later in the document. And which is to say that Costco was trying very hard. But it's trying very hard enough if an employee spends a majority of his or her time on non-exempt tasks. If the employer does its best to develop policies as here, requiring the employee to perform most of their time on exempt tasks, if they put in place, like here, procedures where an employee can complain if that's not working out, as Costco did here, there's nothing more that an employer can do. The district court's approach would essentially require Costco to hire another management-level employee whose sole job is to monitor how that employee was spending every minute of his time. And then, of course, you need another management-level employee to monitor that. But counsel, they didn't say any of that, right? They didn't say anything about you'd need another compliance manager. Well, the problem is the didn't include reasonable expectations because it didn't express displeasure. That's not a requirement in Ramirez. As you pointed out, it's a balancing test. Well, here's my concern that maybe nobody did anything wrong. That these people just in the normal course of their jobs, as a matter of fact, ended up working more than 50% of the time on non-exempt tasks, despite Costco's best efforts. And therefore, I have trouble with the continuing wages part of this case. But under California law, the judge looks at all these factors and says, well, it turned out to be the nature of their particular jobs. That's why you defeated class action status. And in that one, they ought to get the overtime. What's wrong with that ruling? Because the district court invented the requirement for the reasonable expectations analysis. He required Costco to express displeasure when it didn't know that they weren't requiring that. Why is, in the end, isn't the district judge's balancing correct? Because Costco took every step possible to ensure that employees performed up to its expectations. It developed a job description where it said they were exempt employees. It only listed primary, it only listed exempt tasks in the position summary. In this collective bargaining agreement in the warehouse in which the manager Barry worked, it prohibited receiving managers from performing non-exempt tasks. Do you wish to speak specifically to the continuing wages issue with respect to Barry? May I reserve my time? Well, don't don't bother then. We've got your brief on that. That's okay. Thank you. Thank you very much. I would like to specifically hear you on that issue at some point. As would I. And and I will address that. First of all, I'd like to begin briefly with a couple of comments that came in the reply brief that are erroneous. In its reply, Costco claims that, quote, the district court's findings satisfy the requirement that the employer prove the employee regularly exercises discretion and independent judgment. That's not what he found. Costco also incorrectly claims, quote, the customary and regular nature of the activities in question were implicitly assumed by all concerned. That's not accurate. The reply continues, the purported independent significance that the manager is now attached to this phrase, the phrase customarily and regularly exercised discretion and independent judgment, is simply a gotcha tactic adopted on appeal. That's not true. In our proposed findings of fact, we specifically state, and this is excerpts excerpts of the record at 1208, quote, the executive exemption requires Costco to prove that plaintiffs were, quote, and regularly exercised discretion and independent judgment in performing those duties, quote, citing to the California Labor Code, section 515. We continued in our pretrial submission. Costco has failed in carrying its burden that plaintiffs were primarily engaged in executive duties. Costco has also and independent judgment. Well, let me ask you the flip side of the question that we're posing to your colleague. It looks to me like in this case, Costco designed these jobs to be exempt. Had policies, let me finish, had policies requiring the jobs to be exempt, thought these people would perform exempt tasks, but couldn't prove that they actually did. Is that enough to violate the statute? Your Honor, I'm not sure the premise of your question. Accept the premise. Okay, accepting it was designed to do it, I'd say no, particularly because here we're dealing with Costco, a major Fortune 100 company, as opposed to the Yosemite Water Company. And as Your Honor cited to the memo in early 2000, they had senior executives who say we're studying these positions, and we're going to the study that was made, they claimed the study that was made of all these positions in connection with the Randall case, which was filed shortly after the reclassification. Yeah, but now you're attacking my premise. Go back to my premise. Let's assume that Costco was as careful as they could be to make sure that these managers didn't become non-exempt employees. But these two did. Is that enough for you to recover overtime under the California law? Well, I think that's, in that situation is where the, Costco is then required to tell them to stop doing it and to put them in another job. So your answer to my question, your answer to my question is, is yes, they get overtime because Costco must go to them, even if it doesn't know that they're doing this and saying, and say stop. But to say they don't know, this is the area where all the merchandise comes into the building, where all the managers come in the building in the morning. So how are they supposed to know? Opposing counsel's suggestion that there needed to be a compliance officer is not... That's not true at all. Well, but is there, what's the best evidence they knew? The best evidence they knew, your honor, is that there really are hardly any exempt functions at all to be performed by the receiving manager. The receiving manager has to give an annual evaluation of the employees. The receiving manager spends the vast majority of his or her time helping count the merchandise, helping unwrap the pallets, helping wrap the pallets back up and ship them off, back to the vendor when it's defective merchandise. All, everything is on a computer. They have little wands that they scan the merchandise with. That answers all the questions. Defective merchandise, same thing. They scan the wand and it tells them what to do with it. What Costco failed to do here, and what it would have failed to do no matter how many witnesses it had, and no matter how much time it had, they could never prove that these people were exempt because they don't have a meaningful number of exempt duties. The only way this job could be exempt would be if the man or woman who is acting as receiving manager did his annual review and spent the rest of his time sitting in a chair watching the people. Which they didn't do. They spent their time working hand-in-glove with them, following the Costco mandate to lead by example, helping unload the merchandise, and then with the defective merchandise, send it back to the vendor. And that's why this memo is crucial, because it states, how do we answer questions that we're going to get? And one of the questions... Counsel, are you referring now to the memo 9-9-1? Yes. Could you give me the ER number on that, please? 9-9-0. This is... It begins at ER 9-9-1, and this led to the Randall case in which receiving managers were included in the case until such time, but they didn't have a receiving manager, so they didn't have someone who was typical. Counsel, when I looked at this memo initially... I refer the memo in the record because the trial court judge said, we have seen memos that convinced the trial court that... Now, albeit that this is in the penalty portion of the ruling, where he said, we've seen memos that led him to believe that Costco was looking the other way. But he didn't reference which memo he was talking about. Is there... Other than the one I've got in my hand that we've been talking about this morning, is there any other memo that was admitted that we should be considering? Yes, Your Honor. There are other memos. For example, in 2006, which talked about... The ER case. I'm sorry, I don't have that. That memo says we have to be concerned about people working 12 to 14 hours a day or overworking them. Is this the one that says that managers don't drive forklifts? No, that... This is a different memo, although that memo also highlights the point, because you don't say managers don't drive forklifts unless you know they are driving forklifts. Well, it did refer to a different level of manager, but... All right. And also to explain the levels, we have a huge corporate organization in Washington that is managing the operation. Then we have, in San Diego, a divisional headquarters that is managing it. We have, in Garden Grove, a regional operation that is actually ordering the merchandise that comes in the back door and then sends it out. The receiving manager plays no role in the merchandise that's coming in or going out other than waving a wand, which then generates a mailing label. So the reality is that the receiving manager job itself, as we unsuccessfully argued in class certification, and we're not re-arguing that now, but that job simply doesn't have a sufficient number of exempt tasks to ever qualify. Counsel, the memo I think you're referring to is dated December 11, 2006. It's a one-page memo. Yes. All right. We received a letter from a frustrated and disheartened manager. It starts with that? Yes. That's the memo you're referring to? Yes. All right. I've got those two. Is there anything else that I'm overlooking? Well, I think also that, and I don't know if it's a separate memo, the memos that say managers shouldn't use forklifts, which implies in states that, and maybe it's in that one. This is the forklift memo. Yeah. All right. So I've got them. Thank you. And so there's a big difference between Ramirez and Yosemite Water Company, which is dealing with a fellow who's out on the road, and this situation, which is dealing with a man or woman who's the receiving manager under the eyes of the. I think we understand that point. If I might interrupt, because your time is ticking, and all three of us want to hear about the penalty, I think. As to Mr. Berry. That's what I'd like to address. So that requires a finding of willfulness, correct? Yes. What evidence supported the finding of willfulness? Well, first of all, the willfulness standard, if I can address very briefly, it's outlined in Davis and Morris. And all it means is that it happened. If all it means is that it happened, why don't you get it for both people? Well, because Ms. Velasquez was injured, and she continued as an employee. But then it applies in every case, doesn't it? No, it wouldn't apply in a case, for example, Your Honor, where the payroll is being driven to the payroll service, and there's a car accident, and the check is late. No, but any time somebody – I didn't mean to interrupt you, sir. It sounds a whole lot to me like what you're saying, because it would happen every time. No, I don't mean that, and I perhaps overstated that. Okay, so it does require a finding of willfulness. Yes, Your Honor, but the Davis and Morris case from the 40s, which has been cited a thousand times by California courts, establishes the level of willfulness at the lowest possible level. It's not like a criminal – You're arguing that willfulness is merely that it wasn't done unconsciously, right? Not that they knew or should have known. It's not the willfulness standard. But isn't that negligence, knew or should have known? Isn't willfulness a higher standard than negligence? Well, I think willfulness has various standards and various levels in the law, and the standard under California law for willfulness is the lowest possible standard. So you're saying under California law, willfulness is less than negligence or equal to? Yeah, it's certainly less than a penalty, for example. Doesn't that bring you to what Judge Christin suggested, that this is superfluous? It would apply in every case, if you're correct, about how low the standard is. No, no. When wouldn't it apply? I don't mean to say that, Your Honor. I'm saying it applies if they knew or should have known, and we established that they – But knew or should have known was part of establishing the liability, wasn't it? I'm sorry, Your Honor? Knew or should have known was part of establishing the liability in the first place. Yes, yes. But what is it that raises a case from liability to also penalty or continuing wages? Yes, this raises – That's supposed to be willfulness. What raises it? Right. What is the difference between that and what is necessary to make out liability in the first instance? Yes, Your Honor. What is necessary and what we put in the record are the exhibits that we've discussed this morning. The fact that Costco had been challenged, they'd been sued in 2003. But that establishes knew or should have known. I mean, I think – I'm still going back to Judge Sentelle's question. I understand your position that those exhibits are enough to establish knew or should have known, and I tend to agree with you. The question is whether or not knew or should have known is enough to establish willfully. And it just seems to me – so one of the cases uses the word intentionally. Well, I think, Your Honor, I would urge you to consider the Davis case, which has been followed by all the courts for the last 50-plus years. So go back to Judge Sentelle's question then. If part of establishing your case in chief is establishing knew or should have known, and you did – I'll take for purposes of this question that you did – through those two documents, then every time you've established your prima facie case, you've also established the case for the continuing wage. Is that your position? Not the prima facie case for owing overtime, Your Honor. Why not? Because don't you have to establish knew or should have known in order to get overtime? I don't – I think if somebody works overtime, and yes, and the employee knew or – yes, I agree. Yes, I'm sorry, I had to think for a – See, this makes this not a penalty, but part of the award, doesn't it? It's an automatic add-on. Under that construct, it's an automatic add-on. And the statute calls it a continuing wage. The statute says the employee shall stay on the payroll and continue on the payroll for up to 30 days. And it shall be paid as a penalty. And the reason it says it shall be paid as a penalty is they wanted to avoid having the W-2 withholding made on it. It was for a tax reason that that was put in. So as far as intent and on the level, this is at the bottom of intent. And I think we established serious intent, though, because of these memos, because of the fact that from 2003 until 2006, Costco was defending a case where it was accused of misclassifying the receiving manager. Costco admitted that it had done a study of that. It asserted the attorney-client privilege with respect to that study, which is fine. But if they want to prove at some point that they were complying, the fact that they had a study and didn't reveal it, and it went all the way to the California Supreme Court in 2010, I think, but they had a study of receiving managers that was made before these people worked, that study was never made available to us. So the only inference must be that that study would have hurt their position, that if their evidence exists and a party withholds it for whatever reason, the inference is fair that that would have hurt their position. In the penalty phase of the case, the judge's oral findings said, we've seen memos, and I've just got these two memos, to show evidence in support of willfulness. Is there anything else that supports a finding of willfulness on the part of Costco for purposes of that penalty? I think also the Randall case, which was also... Forgive me, but I'm asking for evidence. Yes, the Randall case was an evidence, Your Honor, which established that the defendant, Costco, during the time these people were employed as receiving managers, was defending a case ultimately settled for $15 million, where the status of receiving managers as exempt or non-exempt was challenged. There was, in connection with that, a study made by Costco of these positions. So what form did that evidence take at trial? The form was the complaint itself, Your Honor. The complaint. Was there anybody who testified and explained to the court about this study, or about what had been happening simultaneously at Costco? There was no testimony about the study, but it was referred to by the reference to the trial exhibits and the decision that was made by the Supreme Court, withholding, you know, upholding the claim of privilege. Obviously, also the inference would be if a company like Costco gets sued because someone in each and every one of its stores, the receiving manager, is non-exempt and they're not paying them overtime, the inference would be that they would study that position. I want to ask you a separate question. I know your time is over, but I want to ask the other side this, too. Let's assume we disagree with you about the continuing wages provision. Does that affect the attorney's fee award? I don't think it would, Your Honor. It's hard to see that any time was spent on that that wouldn't have been spent on the case-in-chief. It would not affect that, Your Honor, because the attorney's fees were granted on account of the fee-shifting provision for approving unpaid overtime. There is no fee-shifting provision for 203, so there was no award of attorneys. And were there any separate costs incurred with respect to this part of the case? No, Your Honor. Thank you. Thank you, Counsel. Thank you very much. We greatly appreciate it. Thank you. We'll hear at rebuttal. Thank you. I'd like to just stress three points quickly. The district court didn't conclude that Costco turned a blind eye to some evidence of alleged misclassification. It said it had a duty to inform itself of what they were doing. There's a big difference. A blind eye is some evidence of misclassification that came before them and they avoided it. I appreciate that, and I tried to be careful to say I was paraphrasing. And I think I used the phrase, knew darn well, or something not very artful. But I appreciate the page of the transcript. I've read it several times. I appreciate the person. Well, what Costco did here, not only did they, as we mentioned, they reclassified the position. And those memos aren't evidence of some sort of bad behavior. They're evidence that Costco's management was warning everyone, hey, this is not appropriate behavior. You've got to correct this. Well, Counsel, I'll tell you, when I first read the memo, I wasn't sure whose exhibit it was at trial. I mean, it cuts both ways, to be sure. And that's why I asked the question. I think that's why Judge Hurwitz asked it as well, about this constellation of factors that have to be considered. And I haven't heard anything that tells me that your factor that you want us to focus on trumps the others. But, for example, if you look at Ramirez, the case involved an outside salesman. Judge Moss specifically developed the reasonable expectations requirement, out of the concern that that salesman could be doing whatever he wanted, and secretly evade the employer's expectation that he was going to be selling. And then he'd come back and say, whoa, I wasn't selling that whole time. I was playing video games at the arcade. Similar here. Costco put in place strict requirements. It didn't turn a blind eye. Every day, the testimony is that every single day, the general manager stopped by the receiving department to check in on them. They didn't know, plaintiffs conceded, they didn't know that they were spending most of their time on non-exempt work. No Costco, plaintiffs conceded, no Costco was in a position to tell how they were spending all of their time. The managers admitted they knew the expectation was that they were supposed to spend most of their time on exempt work. They conceded that they had good subordinates who knew their jobs, and all the subordinates said we don't need their help with our jobs. Both managers signed the standards of ethics, which said we will raise any legal concerns to our management. They signed the code of conduct, which said we promise to obey wage and hour laws. And they were both aware of Costco's well-established open-door policy, in which they could raise any concerns to management. And the supervisors all testified that if you had raised those concerns to me, we would have given you additional employees. We would have provided you some help. And in fact, Ms. Velasquez used the open-door policy on other issues in the past. I'd like to make one final point about the waiting time penalties. The standard isn't should have known or known for waiting time penalties. As Kwan, the case we cited in our brief, establishes, the standard is whether you knew they were not performing up to expectations. Thank you, counsel. I want to thank both counsel. We'll stand in recess. Before we go, I just want to assure Judge Sentell, who after all does have a professional reputation, and a very impressive one to be concerned with, and he's sitting up here with Judge Hurwitz and I today, I promise you that Judge Hurwitz teases me about my work on the Alaska Supreme Court every bit as much as I tease him. And it's all in good fun. Thank you.
judges: Sentelle, Christen, Hurwitz